UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL COTTLE,<br><br>            Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>            Defendant. | No.  2:10-cv-1886 CKD<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born October 19, 1960, applied on September 27, 2005 for DIB, alleging disability beginning June 29, 2005.  Administrative Transcript ("AT") 37-38.  Plaintiff alleged he was unable to work due to the effects of chronic venous insufficiency in his lower right leg.

/////

/////

1

AT 127. In a decision dated April 20, 2012, the ALJ determined that plaintiff was not disabled.[1]

AT 348-361. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant engaged in substantial gainful activity since June 29, 2005, the established onset date.
>
> 3. As indicated there has been a continuous 12-month period from the established onset date through the date he returned to work full-time, during which the claimant did not engage in gainful activity which was substantial gainful activity earnings levels. The remaining findings address the period the claimant did not engage in substantial gainful activity.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> 4. The claimant has the following severe impairments: chronic venous insufficiency, obesity and a personality disorder.
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined [in the regulations] with the ability to push, pull, lift and carry 50 pounds occasionally and 25 pounds frequently; to stand, walk or sit for 6 hours in an 8-hour day with capacity to change positions every hour for five minutes in order to avoid prolonged sitting, standing and walking. He can frequently interact with supervisors, co-workers and the public.
>
> 7. The claimant is able to perform his past relevant work as an information technology specialist.
>
> 8. The claimant has not been under a disability, as defined in the Social Security Act, from June 29, 2005, through the date of this decision.

AT 350-361.

ISSUES PRESENTED

Plaintiff contends the same ALJ should not have heard this matter on remand, the ALJ improperly evaluated the medical opinions, improperly discredited plaintiff's testimony, and committed error at step four of the sequential analysis.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

1    rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

2    The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
3    Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
4    conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not
5    affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see
6    also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the
7    administrative findings, or if there is conflicting evidence supporting a finding of either disability
8    or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
9    1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
10   weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

11   ANALYSIS

12       A.  HALLEX

13   Internal policy of the Social Security Administration provides that on remand from the
14   Appeals Council, including remands generated by the court, the proceedings are held before the
15   previously assigned ALJ, unless the case previously was assigned to that ALJ on a prior remand
16   and the ALJ's decision after remand is the subject of the new remand or the Appeals Council or
17   court expressly directs the case be assigned to a different ALJ. HALLEX I-2-1-55D.11.a. This
18   provision is a purely internal procedural guidance and is not binding on the Commissioner. See
19   Moore v. Apfel, 216 F.3d 864 (9th Cir. 2000). In this case, the matter was originally remanded to
20   the same ALJ by the Appeals Council. AT 24-26. A new hearing was held and the ALJ issued a
21   new decision. Plaintiff sought review in this court; however, the recording of plaintiff's hearing,
22   held on July 8, 2009, could not be located. Therefore, pursuant to the stipulation of the parties,
23   the matter was remanded under sentence six for a new hearing. ECF Nos. 16, 17. Under these
24   circumstances, there was no violation of HALLEX in having a third hearing before the same ALJ.
25   Moreover, plaintiff has failed to demonstrate any bias on the part of the ALJ. See Rollins v.
26   Massanari, 261 F.3d 853, 857-858 (9th Cir. 2001) (ALJ presumed to be unbiased; presumption
27   can be rebutted by showing conflict of interest or some other specific reason for disqualification;
28   plaintiff must show ALJ's behavior, in context of whole case was "so extreme as to display clear

inability to render fair judgment"), quoting <u>Liteky v United States</u>, 510 U.S. 540, 551 (1994). Plaintiff suggests that the ALJ demonstrated antipathy toward plaintiff and that the ALJ prejudged him. The court's review of the entirety of the administrative record demonstrates no such bias.

### B. Mental Impairment

Plaintiff contends the ALJ erred in the evaluation of plaintiff's mental impairment by improperly rejecting the opinions of Drs. Lamb and Regazzi. Dr. Lamb provided a psychiatric evaluation of plaintiff in 1994 in connection with a workers compensation claim arising out of plaintiff's employment with his father. AT 181-193. Dr. Lamb opined that plaintiff had minimal impairment in several work related activities but moderate to severe impairment in the ability to respond appropriately to evaluation or criticism and the ability to influence people. AT 192. Dr. Regazzi performed a psychological evaluation of plaintiff in April, 2008. AT 165-170. Dr. Regazzi found no impairment in activities of daily living, in the ability to understand, carry out and remember simple instructions, and in the ability to attend work on a regular basis. AT 170. With respect to the ability to respond appropriately to co-workers, supervisors and the public, Dr. Regazzi assessed marked impairment. <u>Id</u>.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. <u>Id</u>. at 830. While a treating professional's opinion generally is accorded superior weight, if it is

contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala , 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

       The ALJ rejected Dr. Lamb's opinion as too remote in time, unsupported by current records, and unsupported by longitudinal records of treatment for psychiatric issues either through medication therapies or mental health counseling. AT 359. Plaintiff here did not claim onset of disability until June 2005, over a decade after Dr. Lamb's evaluation. During that time, he was employed despite Dr. Lamb's assessment of moderate to severe impairment in work related activities. The record is devoid of any psychiatric treatment or referrals from plaintiff's treating physicians for psychiatric related complaints. Similarly, in considering Dr. Regazzi's opinion, the ALJ accorded "good weight" to the opinion but noted that Dr. Regazzi's mental status findings, plaintiff's working history from 2007 to September 2008, and the absence of any treatment for mental impairments refuted any limitation to simple repetitive tasks and the marked limitations assessed by Dr. Regazzi. AT 359. The ALJ also considered Dr. Regazzi's reliance on the out-of-date assessment of Dr. Lamb. The ALJ specifically considered the evidence that plaintiff had been terminated from employment for difficulties in interacting with supervisors, but found plaintiff's personality disorder did not preclude plaintiff from all employment. AT 360. The reasons set forth by the ALJ in rejecting Dr. Lamb's opinion and rejecting Dr. Regazzi's extreme limitations are valid, supported by the record, and clear and convincing.

       C. Physical Impairment

       Plaintiff also contends the ALJ improperly assessed his physical impairments. At step two of the sequential analysis, the ALJ found that he has severe physical impairments of chronic venous insufficiency and obesity. As noted by the ALJ, the record contains numerous medical

1  opinions regarding plaintiff's physical impairments. AT 354. The ALJ considered the record
2  medical opinions from plaintiff's treating sources, Drs. Tajlil and English, consulting examination
3  sources, Drs. Seu and Siciarz, and non-examining sources, Drs. Fountaine and Gerber. AT 354.
4  The ALJ discussed plaintiff's minimal, conservative treatment, diagnostic imagery and testing
5  showing normal conditions, and limited objective findings of abnormalities, usually consisting of
6  limited swelling, tenderness and red scaly rash during times of heightened symptoms in a limited
7  time of treatment, from March 2005 through March 2006. AT 354. In general, the ALJ found the
8  significant limitations on the capacity to sit, stand and walk assessed by plaintiff's treating
9  physicians were less persuasive than the consulting sources because of plaintiff's minimal
10 treatment, limited objective findings, and plaintiff's activities of daily living. AT 354.

11       The ALJ specifically addressed the opinion of Dr. Tajlil, who wrote a "To Whom It May
12 Concern" letter dated May 2, 2005 in which he advised plaintiff to elevate his legs for at least 15
13 minutes every hour, or at least every two hours to relieve the swelling and pain in plaintiff's legs,
14 and to walk at least 10-15 minutes after being in a sitting position. At 239. The ALJ accorded
15 only "good," not "great" weight to this opinion, noting that the opinion arrived after less than
16 twelve months from commencement of treatment, that it was inconsistent with the plaintiff's
17 minimal treatment and limited symptoms and objective findings, and was inconsistent with
18 plaintiff's rather ordinary activities of daily living and working history from 2007 and September
19 2008 to the present showing plaintiff could sustain long term employment. The ALJ also
20 considered the inconsistency of Dr. Tajlil's opinion that plaintiff needed to elevate his leg with
21 the contrary opinions of all the other treating and consultative sources that no such functional
22 limitation existed and plaintiff's comments in the medical record that elevation of his legs did not
23 alleviate his symptoms. AT 171-175 (internal medicine evaluation dated January 25, 2008 by Dr.
24 Siciarz), 220 (plaintiff reported in August 2005 that elevating his legs did not help), 226-227 (Dr.
25 English's physical ability assessment dated November 10, 2005), 243-250 (state agency physician
26 Dr. Fountaine's assessment dated April 10, 2006), 252-255 (comprehensive internal medicine
27 evaluation by Dr. Seu performed on March 9, 2006), 355, 424-432 (Dr. Gerber's assessment
28 provided by oral testimony at the March 21, 2012 hearing after review of the records).

Similarly, with respect to Dr. English's assessment that plaintiff needed to be mobile on a frequent basis, the ALJ gave little weight to this part of the opinion because it was inconsistent with the other medical opinions and was unsupported by the medical record. AT 228, 355. The opinion of Dr. English with respect to plaintiff's ability to sit, stand, walk, climb, stoop, kneel, crouch, crawl and use his lower extremities for foot controls were accorded only "good" weight because of the lack of objective findings, the minimal record of conservative care, plaintiff's demonstrated ability to sit for the one hour hearing, the lack of continued treatment, and the contradictory record medical opinions. The opinions of both consulting examining physicians were based on their own objective medical findings. Considering the record as a whole, substantial evidence supports the ALJ's determination of the weight accorded to the conflicting medical opinions.

D. Credibility

Plaintiff further contends that the ALJ improperly discredited plaintiff's allegations that the problems with his right leg cause him to lose focus and that he cannot sit and stand for more than 20 to 30 minutes. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d

1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

     The ALJ discredited plaintiff's allegations on several bases.  The ALJ noted that plaintiff had been working at a significant gainful activity level since April 2009 and also had significant earnings from September 2008 through January 2009 despite plaintiff's assertions that he still suffered from a debilitating condition.  AT 350-351.  The ALJ discounted plaintiff's testimony regarding an inability to sit for long periods in part because plaintiff sat throughout the hearing, which lasted approximately one hour.  AT 353.  Also factored in the credibility analysis was plaintiff's conservative treatment, the lack of continued treatment, and the diagnostic imagery and testing showing normal conditions, all of which undermined plaintiff's subjective complaints of disabling pain.  The ALJ also considered plaintiff's reported activities of daily living which included being able to walk for two to three miles, driving his own car, doing light housekeeping chores without assistance, and doing errands such as going to the post office or grocery store. The factors considered by the ALJ are valid and supported by the record.  The credibility finding was based on permissible grounds and will not be disturbed.

/////

/////

/////

E.  Past Relevant Work

Finally, plaintiff contends the ALJ committed error at step four of the sequential analysis by finding plaintiff could perform his past relevant work. In doing so, plaintiff asserts the ALJ improperly rejected the opinion of a vocational expert.

At step four of the sequential analysis, the ALJ found that plaintiff could perform his past relevant work as a computer specialist, director of information technology, software engineer, computer programmer and systems analyst. AT 101-105, 122, 360. In this case, the ALJ properly relied on plaintiff's own description of his past work as he actually performed it. See Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001) (plaintiff must be able to perform the actual functional demands and job duties of a particular past relevant job or the functional demands and job duties of the occupation as generally required by employers throughout the national economy). For each of plaintiff's past relevant jobs, plaintiff indicated he walked for one hour, stood for two hours, and sat for six to eight hours. AT 101-105, 122. In assessing plaintiff's residual functional capacity, the ALJ properly relied on the opinions of the examining and reviewing physicians and limited plaintiff to having to change positions every hour for five minutes in order to avoid prolonged sitting, standing and walking. As noted by the ALJ, all of plaintiff's past jobs were in a professional or managerial role, which typically allow a person a degree of choice in sitting or standing. SSR[2] 83-12. Given plaintiff's own description of his past relevant work, which included one hour of walking and two hours of standing, the ALJ reasonably concluded that the changing-position limitation could be accommodated.

Contrary to plaintiff's contention, the ALJ did not disregard the opinion of Rodney Schilling, who opined plaintiff could not return to his previous work as a Director of IT. AT 97-100. The ALJ noted that Rodney Schilling was not an acceptable medical source under the regulations and thus only germane reasons need be provided for discrediting this lay witness

---

[2] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

testimony. See <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993); <u>see also</u> <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ accorded little weight to Mr. Schilling's opinion because it was based on Dr. English's assessment of plaintiff's functional capacity, to which the ALJ had accorded little weight. The ALJ also noted that Mr. Schilling's opinion was inconsistent with plaintiff's activities of daily living and the fact that plaintiff had been working since September, 2008 to the present.[3] The ALJ articulated reasons that were germane and supported by the record. There was no error in the ALJ's step four analysis.

CONCLUSION

    For the reasons stated herein, IT IS HEREBY ORDERED that:

    1. Plaintiff's motion for summary judgment (ECF No. 29) is denied;

    2. The Commissioner's cross-motion for summary judgment (ECF No. 34) is granted; and

    3. Judgment is entered for the Commissioner.

Dated: May 13, 2014

    _____
    CAROLYN K. DELANEY
    UNITED STATES MAGISTRATE JUDGE

4 cottle.ss

---

[3] Plaintiff testified he had been working with the Department of Corrections in the area of information technology since April 2009 to the present and that he was employed as a tech support person in 2008. AT 350, 442.